UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSEPH RABADI,                                         :
                              Plaintiff,               :
v.                                                     :
                                                       :
CITY OF YONKERS; MIRIAM E. ROCAH in                    :
her official capacity as District Attorney for         :       **OPINION AND ORDER**
Westchester County; COUNTY AUTO &                      :
TOWING NORTH, INC.; A.D.A. BRIAN                       :       21 CV 1258 (VB)
BENDISH; AMERICREDIT FINANCIAL                         :
SERVICE, INC. a/k/a AMERICREDIT CORP.                  :
d/b/a GENERAL MOTORS FINANCIAL                         :
COMPANY, LLC; and LOCATION                             :
SERVICES, LLC,                                         :
                              Defendants.              :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Joseph Rabadi brings this action under 42 U.S.C. § 1983, the Fair Debt

Collection Practices Act ("FDCPA"), and New York State law against defendants the City of

Yonkers; Westchester County District Attorney Miriam E. Rocah ("DA Rocah"); Westchester

County Assistant District Attorney Brian Bendish ("ADA Bendish" and, together with DA

Rocah, the "DA Defendants"); County Auto & Commercial Towing North, Inc. ("County

Towing"); Location Services, LLC ("Location Services"); and AmeriCredit Financial Service,

Inc. a/k/a AmeriCredit Corp. d/b/a General Motors Financial Company, Inc. ("GM").

        Now pending are the DA Defendants' motion to dismiss the third amended complaint

(Doc. #71 ("TAC")) pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. #81), and GM's motion to

dismiss the TAC in part pursuant to Rule 12(b)(6) (Doc. #84).

        For the following reasons, the DA Defendants' motion to dismiss is GRANTED IN

PART and DENIED IN PART, and GM's motion to dismiss in part is GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the TAC and draws all reasonable inferences in plaintiff's favor as summarized below.

Plaintiff alleges that on December 7, 2020, he was sitting inside his leased Chevy Malibu, which was parked on a street in Yonkers, when an individual named Andy Andrews approached the front of the car with a gun and fired several shots through the windshield, striking plaintiff and leaving him with severe injuries.

Plaintiff alleges he escaped his car and was rescued by police officers from the Yonkers Police Department ("YPD").  According to plaintiff, YPD officers promptly arrested Andrews and called an ambulance for plaintiff to transport him to a nearby hospital.

Plaintiff contends that, while he was hospitalized, the YPD directed the towing and impoundment of his car by County Towing, successfully processed the car for evidence, and sent plaintiff a letter instructing him to contact the Westchester County District Attorney's Office ("WCDA") to schedule a "Seizure Hearing" to regain possession of his car.  (Doc. #35-3).[1]

Plaintiff alleges that on December 21, 2021, he contacted the WCDA by telephone, as instructed, but was denied a seizure hearing "by the conduct" of ADA Bendish, the Assistant District Attorney overseeing the criminal prosecution of plaintiff's shooter.  (TAC ¶ 56). Plaintiff alleges that ADA Bendish refused to authorize the release of plaintiff's car "unless and until" plaintiff first released his hospital records and gave a sworn statement "to assist [Bendish] in prosecuting Andrews."  (Id. ¶ 55).  Plaintiff allegedly refused to yield to Bendish's demands.

---

[1]     The TAC incorporates by reference numerous exhibits that were attached to the second amended complaint (Doc. #35), but not to the TAC itself.

Plaintiff contends that in the months that followed this conversation, ADA Bendish continued to ignore plaintiff's requests for release of his car despite acknowledging to plaintiff in January 2021 that he no longer had any need for the car, and that he was merely waiting for the approval of his supervisor.

Plaintiff further alleges that, all the while, his car remained impounded by County Towing—with mounting storage fees that were being charged to plaintiff—until April 2021, when the car was repossessed by GM.  Plaintiff alleges that at all relevant times, GM was the assignee to the lessor's rights under the Chevy Malibu lease agreement.

According to plaintiff, sometime in or around March 2021, ADA Bendish initiated GM's repossession of the car by falsely informing GM that plaintiff's car was impounded for "unpaid parking tickets and judgments."  (TAC ¶ 107).  Plaintiff alleges that upon learning of the impoundment, GM requested release of the car into its custody on the mistaken basis that plaintiff was in "default" under the terms of his lease agreement.  (See id. ¶¶ 99–107).  YPD, in turn, allegedly ordered release of the car to GM and sent two property release forms to plaintiff, dated April 1, 2021, telling him the car was "not needed by [the] ADA" and was being repossessed by GM.  (Docs. ##35-13, 35-14).

According to plaintiff, GM took possession of the car on or around April 1, 2021, despite sending plaintiff a letter giving him a deadline of April 12, 2021, to make any payments associated with plaintiff's purported "default."  (Doc. #35-11).

**DISCUSSION**

I.    <u>Standard of Review</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint according to the "two-pronged approach" articulated by the

Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[2]  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

To survive a Rule 12(b)(1) motion, the allegations in the complaint must demonstrate, among other things, that plaintiff possesses Article III standing to seek the relief requested.  <u>Conn. Parents Union v. Russell-Tucker</u>, 8 F.4th 167, 172 (2d Cir. 2021).  A plaintiff must demonstrate standing for each form of relief sought.  <u>See</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111–12 (1983).

II.    <u>Section 1983 Claims Against DA Rocah</u>

The DA Defendants argue plaintiff's Section 1983 claims against DA Rocah, alleging violations of the First and Fourteenth Amendments, must be dismissed because plaintiff fails

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

plausibly to allege that execution of an official policy or custom of Westchester County inflicted his injuries.

The Court agrees.

A.      Legal Standard

It is well established that when a plaintiff asserts claims against a district attorney in her official capacity "centering . . . on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which [s]he is assigned." Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993). Section 1983 claims against municipal policymakers, in turn, are treated as claims against the municipality itself under Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

A Monell claim may proceed against a municipality only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694.

In the absence of a formal policy endorsed by the municipality or an individual action taken by a final policymaker, a plaintiff may satisfy the "policy or custom" requirement by alleging "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." See Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

B.    Analysis

Here, plaintiff fails adequately to plead any non-conclusory facts suggesting "that the challenged actions were in any way related to a custom or policy promulgated by [the WCDA]." Ying Jing Gan v. City of New York, 996 F.2d at 536 (the "mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

Plaintiff's only allegation that potentially implicates a custom or policy is ADA Bendish's purported confirmation to plaintiff that he had to speak with an unspecified supervisor before releasing plaintiff's car.  (See TAC ¶ 59).  However, plaintiff supplies no additional allegations suggesting this supervisor wielded "final policymaking authority" on the retention of seized cars, getting witnesses to cooperate with prosecutors, or charging towing and storage fees. See Brandon v. City of New York, 705 F. Supp. 2d at 276–77.

Stripped away of the above and other conclusory allegations, the TAC merely alleges a "single instance" of constitutional deprivation, which is insufficient to support a claim of a municipal policy.  See Ruane v. County of Suffolk, 2015 WL 2337329, at *8 (E.D.N.Y. May 13, 2015).

Accordingly, plaintiff's Section 1983 claims against DA Rocah must be dismissed.[3]

III.    Declaratory Judgment Claims Against DA Rocah

The DA Defendants next argue plaintiff's claims for declaratory judgment against DA Rocah must be dismissed for lack of standing.

The Court agrees.

---

[3]    To the extent plaintiff asserts conspiracy claims under Section 1983 against DA Rocah, those claims must be dismissed on the same basis.  (See TAC ¶¶ 148, 154).

Standing is a prerequisite to bringing suit in federal court.  To plead constitutional standing to sue, a plaintiff must allege:  (1) he suffered an "injury in fact"; (2) there was a causal connection between the injury and defendants' conduct; and (3) a federal court decision is likely to redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

To satisfy the injury-in-fact requirement, a plaintiff must allege an injury that is both "concrete and particularized" and "actual or imminent"; that is, not "conjectural" or "hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. at 560.  "In order to meet the constitutional minimum of standing to seek injunctive relief, [plaintiff] must carry the burden of [pleading] that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct."  Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004).  To meet this burden, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future."  Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).

Here, each of the claims for declaratory judgment against DA Rocah appear to rely on past injury, including the alleged deprivation of plaintiff's car, the alleged attempt to hold the car "ransom" to ensure plaintiff's cooperation, and the charging of towing and storage fees.

Accordingly, plaintiff's claims for declaratory judgment must be dismissed as to DA Rocah.[4]

---

[4]     To the extent plaintiff asserts claims for declaratory judgment against DA Rocah under Section 1983, those claims are independently dismissed on the same grounds as his Monell claims against DA Roach for damages.  See Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29 (2010) ("Monell's holding applies to § 1983 claims against municipalities for prospective relief as well as to claims for damages.").

IV.    Section 1983 Claims Against ADA Bendish

The DA Defendants argue ADA Bendish is absolutely immune from civil liability for damages respecting any claims under Section 1983 for violations of the First and Fourteenth Amendments.

The Court agrees to the extent the Section 1983 claims arise out of ADA Bendish's alleged holding of plaintiff's car "ransom" until plaintiff agreed to cooperate with the prosecution of plaintiff's shooter.  The Court disagrees to the extent the claims arise out of ADA Bendish's alleged role in facilitating the repossession of the car by GM under false pretenses.

A.    Absolute Immunity

1.    Legal Standard

Prosecutors are afforded absolute immunity from federal civil suits seeking monetary damages for actions for "virtually all acts, regardless of motivation," undertaken as part of the prosecution, unless there is a clear absence of any jurisdiction for the challenged conduct. Anilao v. Spota, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

To determine whether a prosecutor enjoys absolute immunity, a court must first apply a "functional" test, examining whether it is clear from the face of the complaint that the challenged conduct is reasonably "associated with the prosecutor's function as an advocate." Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012).  "[A] prosecutor unquestionably acts as an advocate . . . when []he initiates and pursues a criminal prosecution." D'Allessandro v. City of New York, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order).  The "pursuit" of a criminal prosecution, in turn, entails, among other actions, "evaluating evidence and interviewing witnesses." Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273

(1993)).  A prosecutor acting solely as an investigator or an administrator, however, cannot benefit from absolute immunity.  See Giraldo v. Kessler, 694 F.3d at 166.

Next, even if a prosecutor's alleged actions can be fairly associated with his function as advocate, the court must then evaluate whether the prosecutor is alleged to have "proceed[ed] in the clear absence of all jurisdiction," that is, "where the prosecutor act[s] well outside the scope of authority." Anilao v. Spota, 2022 WL 697663, at *5.  This "narrow limitation to the scope of absolute immunity" applies only when the "the jurisdictional defect [is] clear and obvious," such as when a prosecutor makes a prosecutorial decision because he received a bribe or sexual favor. Id.

Put another way, prosecutors retain absolute immunity for advocacy-related actions so long as there is "at least a colorable claim of authority" or "some semblance of jurisdiction" for the challenged action such that it "does not run far afield of their job description."  Anilao v. Spota, 2022 WL 697663, at *5.

2.      Section 1983 Claims Based on "Ransom" Demand

Here, it is clear from the face of the TAC that ADA Bendish's alleged retention of plaintiff's car in exchange for plaintiff's cooperation in Andrews's prosecution is protected by absolute immunity.

First, ADA Bendish's alleged holding of plaintiff's car "ransom" until plaintiff "provid[ed] a sworn statement to assist Bendish in prosecuting Andrews" (TAC ¶¶ 53, 73), however reprehensible, is precisely the type "of-out-court effort to control the presentation of a witness's testimony" that is considered "fairly within the prosecutor's function as an advocate." Shaughnessy v. State of New York, 2014 WL 457947, at *4 (N.D.N.Y. Feb. 4, 2014)

(prosecutor's alleged threat to have victim's grandmother arrested if the victim did not testify against plaintiff protected by absolute immunity).

Second, it is not so "clear[ly] and obvious[ly] absent of any doubt" that the challenged retention of plaintiff's vehicle fell "well outside the scope of [ADA Bendish's] authority" such that absolute immunity should not apply.  Anilao v. Spota, 2022 WL 697663, at *5.  To the contrary, plaintiff concedes his car was retained "to assist the Westchester DA in prosecuting Andrews by gathering evidence," which confers "at least a colorable claim of authority" for the retention of the car such that it "does not run far afield of [his] job description" to hold onto it. (TAC ¶ 41); see Anilao v. Spota, 2022 WL 697663, at *5; see also Parkinson v. Cozzolino, 238 F.3d 145, 152 (2d Cir. 2001) ("[T]he retention of evidence, as a predicate to the presentation of evidence, is critical to the prosecutor's functions as an advocate, and is thus covered by prosecutorial immunity.").

Accordingly, plaintiff's Section 1983 claims against ADA Bendish based on his retention of plaintiff's car in exchange for plaintiff's cooperation must be dismissed.

### 3.    Section 1983 Claims Based on Release of Car to GM

Conversely, it is not clear at this early stage of the case that absolute immunity ought to shield ADA Bendish from liability for his alleged role in releasing plaintiff's car to GM.

First, taken together, the totality of ADA Bendish's alleged conduct following his "ransom" demand raises at least the plausible inference that ADA Bendish had, at some point in time following his initial conversation with plaintiff, ceased acting as an advocate building his case against Andrews and more clearly operated as an administrator of property—that is, plaintiff's car—that was no longer needed for evidence.  Indeed, plaintiff alleges that by the time GM took possession of the car, ADA Bendish had already confirmed to plaintiff that he no

longer needed the car, informed GM that the car was impounded for unpaid parking tickets, and authorized the release of the car to GM via forms that explicitly identify "not needed by ADA" or "DA release" as the reason for the release.  (Docs. ##35-13, 35-14).  Under these alleged circumstances, which the Court must accept as true on this motion, ADA Bendish was arguably no longer exercising the type of "independent judgment [in] deciding what cases" to "initiate and pursue" that the doctrine of absolute immunity was intended to protect against.  Kalina v. Fletcher, 522 U.S. 118, 124–25 (1997).

Second, even if ADA Bendish's alleged interactions with GM implicated Bendish's core function as an advocate, plaintiff plausibly alleges a "clear and obvious absence of any authority under any set of facts."  Anilao v. Spota, 2022 WL 697663, at *9.  Lying to GM so it would unlawfully repossess plaintiff's car is outside of any grant of discretional authority accorded to ADA Bendish as an advocate.

Thus, plaintiff's Section 1983 claims against ADA Bendish based on the alleged repossession of plaintiff's car by GM are not protected by absolute immunity, and will now be addressed below, in turn.

B.    First Amendment Retaliation Claim

The DA Defendants argue plaintiff's First Amendment retaliation claim against ADA Bendish must be dismissed because plaintiff fails plausibly to allege he engaged in any constitutionally protected speech.

The Court disagrees.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took

11

adverse action against him, and (iii) the protected speech and adverse action are causally connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the first element, the Second Circuit has left open whether individuals have a "First Amendment right to refuse to give truthful information about a past event."  Burns v. Martuscello, 890 F.3d 77, 93 (2d Cir. 2018).  In that case, the Second Circuit held that a prison inmate's "refusal to provide false information" to prison guards "and to serve as a snitch on an ongoing basis are protected by the First Amendment."  Id.  In so holding, the court acknowledged that prisoners refusing to snitch seek to "exercise a right akin to the right, enjoyed by members of the public at large [in the context of unreasonable searches and seizures under the Fourth Amendment], to decline to participate in police questioning" by simply walking away. Id. at 91.  Considering the "context in which the speech [was] made," the court also observed that "the jailhouse snitch is imprisoned alongside the very individuals who pose the greatest risk to her safety, creating a unique burden on the liberty interests of the individual inmate."  Id.

In Burns, the Second Circuit dispatched most of the arguments the DA Defendants now raise in support of their motion to dismiss the First Amendment retaliation claim in this case. For example, the court acknowledged, as the DA Defendants now argue in this case, that the information the prison guards sought to elicit from the plaintiff was "not overtly political," but it insisted that such speech nevertheless implicated the "maintenance [and methods] of the criminal justice system," which is "plainly [a] matter[] of broad public concern."  Burns v. Martuscello, 890 F.3d at 90.  In addition, the court distinguished other forms of compelled speech, like subpoenas, that the DA Defendants now argue could be imperiled by such a holding, concluding that "a[] subpoena [unlike an order from a prison guard to be a snitch] can be contested, and a

court may quash or limit the scope of the subpoena if it is overbroad, or otherwise abusive of an individual's rights and privileges." Id. at 92.

Accordingly, the Court is persuaded that plaintiff here enjoyed a limited First Amendment right to refuse to cooperate with ADA Bendish, for substantially the reasons articulated in Burns. Plaintiff, like the plaintiff in Burns, seeks to exercise a right akin to the right to "decline to participate in police questioning" that is "enjoyed by the public at large." Burns v. Martuscello, 890 F.3d at 90. And although plaintiff here is not alleged to be confined with the individual as to whom he was expected to provide information, he does allege that his refusal to cooperate with ADA Bendish was based, at least in part, on fear from reprisals from the shooter. The "longstanding evidentiary principle that the public has the right to every man's evidence" is thus "no bar to finding First Amendment protection here." Id. at 93; see also Newsome v. Bogan, 795 F. App'x 72, 74 (2d Cir. 2020) (summary order) (plaintiff pleaded "valid retaliation claim based on [his allegation] that [officers] seized [his] dogs in response to his refusal to go to the police station for an interview," which was "protected conduct" under the First Amendment).

Accordingly, the First Amendment retaliation claim against ADA Bendish based on the alleged repossession of plaintiff's car may proceed.[5]

---

[5]     The parties do not appear to dispute that plaintiff plausibly asserts the second and third elements of a First Amendment retaliation claim, namely, that ADA Bendish's alleged role in transferring custody of plaintiff's car to GM was "causally connected" to plaintiff's refusal to cooperate with ADA Bendish. See Dolan v. Connolly, 794 F.3d at 294.

C.      Fourteenth Amendment Procedural Due Process Claim

The DA Defendants argue any procedural due process claim based on the alleged repossession of plaintiff's car must be dismissed because plaintiff fails adequately to plead that he utilized post-deprivation relief under state law.

The Court agrees.

"A [random,] unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  The only exception to this rule is if the deprivation resulted from "established state procedures."  Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990).

Here, setting aside plaintiff's conclusory allegations regarding municipal policies, the Court is left only with allegations of a random and unauthorized scheme to deprive plaintiff of his car, with ADA Bendish at the center.  Indeed, plaintiff alleges ADA Bendish "denied plaintiff the Seizure Hearing clearly promised" by the letter he received from the YPD; functioned as plaintiff's primary point-of-contact in his attempts to secure release of the car; and tricked GM into believing plaintiff's vehicle was seized due to unpaid parking tickets.  (TAC ¶ 56); see Ruane v. County of Suffolk, 2015 WL 2337329, at *8 ("This one incidence of a general release having been requested is insufficient to support her claim of a policy or practice requiring a general release when the vehicle has been ordered returned by the forfeiture court.").

Accordingly, "because New York provides an adequate post-deprivation remedy in the form of state-law causes of action for . . . replevin or conversion," plaintiff's claim for the deprivation of his property must be dismissed.  Dove v. City of New York, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000).

14

D.      Fourteenth Amendment Substantive Due Process Claim

The DA Defendants argue plaintiff fails plausibly to allege a substantive due process

claim arising out of ADA Bendish's role in facilitating the wrongful repossession of plaintiff's

car.

The Court agrees.

It is well established that a plaintiff's "property interest in his vehicle is not the type of

fundamental right subject to substantive due process protections." Reyes v. County of Suffolk,

995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014).

Accordingly, plaintiff's substantive due process claim against ADA Bendish must be

dismissed.

V.      State-Law Claims Against the DA Defendants

The DA Defendants argue plaintiff's state-law claims for conversion, trespass of chattel,

and wrongful repossession must be dismissed because plaintiff failed to comply with the notice-

of-claim requirements under New York law.

The Court agrees as to DA Rocah, but disagrees as to ADA Bendish.

A.      Legal Standard

"Notice of claim requirements are construed strictly by New York state courts.  Failure to

comply with these requirements ordinarily requires a dismissal for failure to state a cause of

action." Faruki v. City of New York, 2012 WL 1085533, at *9 (S.D.N.Y. Mar. 30, 2012), aff'd,

517 F. App'x 1 (2d Cir. 2013) (summary order).  "Filing a notice of claim is a mandatory

condition precedent to suit against the [County] and its employees; failure to comply with the

notice of claim warrants dismissal.  The burden is on the plaintiff to demonstrate compliance

with the Notice of Claim requirement." Id.

15

Section 50-e of the New York General Municipal Law requires that "at least thirty days ha[ve] elapsed since the Notice of Claim was filed and before the complaint was filed." <u>Myers v. City of New York</u>, 2015 WL 13881601, at \*20 (S.D.N.Y. Sept. 30, 2015) (citing N.Y. Gen. Mun. Law. § 50-i).  The purpose of the notice-of-claim requirements, including the thirty-days notice, is to "inform of the possibility of an action" and "allow investigation and settlement of the claim before formal litigation is initiated."  <u>Id</u>. at \*21.

"[F]ailure to comply with N.Y. Gen. Mun. Law § 50–i regarding timely service of the notice of claim is a jurisdictional rather than a procedural defect." <u>Myers v. City of New York</u>, 2015 WL 13881601, at \*20.  Accordingly, "federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."  <u>Id</u>. at \*22.

With respect to individual employees of a county, however, the requirements of Sections 50-e and 50-i are <u>not</u> conditions precedent to the commencement of an action "unless the county is required to indemnify such person."  <u>Dipinto v. Westchester County</u>, 2020 WL 6135902, at \*4 (S.D.N.Y. Oct. 19, 2020).

    B.   <u>Analysis</u>

        1.   <u>State-Law Claims Against DA Rocah</u>

Here, plaintiff fails to demonstrate compliance with the notice-of-claim requirements respecting DA Rocah.  Namely, plaintiff alleges he served DA Rocah with a notice of claim on February 16, 2021, which is five days <u>after</u> plaintiff filed his original complaint commencing this action on February 11, 2021.  It is therefore impossible for plaintiff to have allowed thirty days after filing his notice of claim to elapse before commencing the action.

Although plaintiff subsequently filed amended complaints that included additional state-law claims against DA Rocah for trespass of chattel and wrongful conversion, "filing an amended complaint after thirty days have elapsed will not fix the defect if the original complaint was filed less than thirty days from the service of the notice, as it is the original complaint that commences the lawsuit." Myers v. City of New York, 2015 WL 13881601, at *21. This is particularly true when, as here, the additional state-law claims arise out of the same underlying factual circumstances as the original defective state-law claim. Cf. Nolan v. County of Erie, 2021 WL 51004, at *6 (W.D.N.Y. Jan. 6, 2021) (the touchstone of the notice-of-claim requirements is providing sufficient notice to investigate and potentially settle the claim).[6]

Accordingly, the state-law claims against DA Rocah must be dismissed.

                    2.      State-Law Claims Against ADA Bendish

Here, plaintiff alleges he served an amended notice of claim—which added ADA Bendish as a respondent—on April 1, 2021, several days after plaintiff first named ADA Bendish as an individual defendant in his amended complaint on March 29, 2021.

Despite plaintiff's apparent failure to comply with New York's notice-of-claim timeline with respect to ADA Bendish, the notice-of-claim requirements "are not conditions precedent to the commencement of an action against [him, as] a county official or employee unless [Westchester County] is required to indemnify [him]." Dipinto v. Westchester County, 2020 WL 6135902, at *4.

---

[6]     To the extent plaintiff's "wrongful repossession" claim can be construed as a "new distinct theory of liability" arising out of GM's alleged repossession of plaintiff's car, that claim must be dismissed as against DA Rocah as well, as plaintiff does not allege filing any notice of claim respecting the wrongful repossession claim whatsoever. See, e.g., McNaughton v. County of Chautauqua, 2017 WL 4518173, at *3 (W.D.N.Y. Oct. 10, 2017) (dismissing medical malpractice claims based on failure to diagnose when notice of claim only alleged defendants failed to maintain medications and equipment).

Here, in the absence of briefing by any party as to whether Westchester County is required to indemnify ADA Bendish, the Court declines to grant the motion to dismiss as to plaintiff's state-law claims against ADA Bendish.

Accordingly, the state-law claims against ADA Bendish may proceed, without prejudice to the DA Defendants renewing their notice-of-claim arguments on summary judgment.

VI.   Claims Against GM

GM argues plaintiff fails plausibly to allege claims under Section 1983, the FDCPA, and the New York General Business Law.[7]

The Court agrees.

A.   Section 1983 Claim

GM argues plaintiff fails plausibly to allege a Fourteenth Amendment due process claim under Section 1983 because plaintiff offers no allegations suggesting GM can fairly be characterized as a state actor.  See Flagg v. Yonkers Sav. & Loan Ass'n, FA, 396 F.3d 178, 186 (2d Cir. 2005).

The Court agrees that plaintiff's due process claim against GM should be dismissed, because even if GM was a state actor, plaintiff's due process claim would nevertheless be barred by the availability of post-deprivation relief under New York state law, as discussed above.

Accordingly, plaintiff's Section 1983 claim against GM must be dismissed.

B.   FDCPA Claim

GM argues plaintiff's FDCPA claim must be dismissed because plaintiff fails plausibly to allege GM is a "debt collector" under the FDCPA.

---

[7]   Plaintiff also asserts state-law tort claims against GM for conversion, trespass of chattel, and wrongful repossession.  GM has not moved to dismiss these claims and has yet to file an answer.

The Court agrees.

To plead a claim under the FDCPA, a plaintiff must plausibly allege "(1) the plaintiff is a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements."  Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015).

A "debt collector," in turn, means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Conversely, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default."  Id.  "By its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself."  Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1721 (2017).

Here, plaintiff fails to plead any facts to support its conclusory allegation that GM is a "debt collector" under the FDCPA.  First, plaintiff offers no allegations suggesting "the principal purpose" of GM's business "is the collection of debts."  15 U.S.C. § 1692a(6).  Second, the lease agreement referenced in the TAC clearly identifies GM as the assignee to the lease, suggesting that any debts owed to GM under the lease are not "due to another" but rather due to GM itself as a creditor.  Third and finally, plaintiff alleges he was "never in default under the Lease Purchase Agreement" (TAC ¶ 127), such that GM would not have been an assignee of

a debt already in default.  See Cotterell v. Gen. Motors LLC, 2019 WL 6894256, at *4 (D.

Conn. Dec. 18, 2019) (granting motion to dismiss FDCPA claim against GM when complaint

attached original lease agreement identifying GM as assignee and complaint "suggest[ed] that

GM[] remained the assignee when she defaulted her lease payments").

 Accordingly, plaintiff's FDCPA claim against GM must be dismissed.

    C.    New York General Business Law Claim

GM argues plaintiff's claim under New York General Business Law Section 349 must be

dismissed because plaintiff does not plausibly allege any acts taken by GM that were consumer-

oriented.

The Court agrees.

Section 349 of the New York General Business Law is a consumer protection statute that

prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in

the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To state a claim, a

plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts

are misleading in a material way, and (3) the plaintiff has been injured as a result."  Stadt v. Fox

News Network LLC, 719 F. Supp. 2d 312, 319 (S.D.N.Y. 2010) (quoting Maurizio v. Goldsmith,

230 F.3d 518, 521 (2d Cir. 2000)).

With respect to the first element, "the gravamen of the complaint must be consumer

injury or harm to the public interest."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256,

264 (2d Cir. 1995).  Accordingly, "liability attaches primarily where a party's misrepresentations

are boilerplate and have the potential to be repeated in order to deceive numerous similarly

situated [consumers]."  Ellis v. Cohen & Slamowitz, LLP, 701 F. Supp. 2d 215, 224 (N.D.N.Y.

2010) (debt collector's alleged letter-writing campaign threatening legal action if debt was not paid plausibly states claim under Section 349).

Here, plaintiff alleges "GM deceived plaintiff" by "repossess[ing] plaintiff's car nearly three weeks earlier" than the deadline set forth in a letter that GM sent to plaintiff on curing plaintiff's default.  (TAC ¶ 120).  But "[t]here are no allegations as to how [this single incident] affected a wide range of customers—whether others similarly situated or the public at large."  P. Kaufmann, Inc. v. Americraft Fabrics, Inc., 232 F. Supp. 2d 220, 226 (S.D.N.Y. 2002).  "[A]ny suggestion that [GM] has a practice of [misrepresenting the deadline for similarly situated lessees to repay purported debts] is unsupported beyond [plaintiff's] situation in this case." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 65 (2d Cir. 2010) ("[N]o evidence that [defendant], in bad faith, systematically backdates all cancellations in order to avoid insurance obligations.").

Accordingly, plaintiff's claim under General Business Law Section 349 must be dismissed.

**CONCLUSION**

The DA Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

All claims against DA Rocah are dismissed.

The First Amendment retaliation claim under Section 1983 against ADA Bendish, based on ADA Bendish's alleged role in facilitating GM's repossession of plaintiff's car, may proceed. Plaintiff's state-law claims against ADA Bendish for conversion, trespass of chattel, and wrongful repossession may also proceed.  All other claims against ADA Bendish are dismissed.

GM's motion to dismiss in part is GRANTED.  The remaining state-law claims against GM for conversion, trespass of chattel, and wrongful repossession may also proceed.

ADA Bendish and GM shall file their answers by April 8, 2022.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate defendant Miriam E. Rocah from this action.

The Clerk is further instructed to terminate the motions.  (Docs. ##81, 84).

Dated: March 25, 2022
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge